**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on February 18, 2016, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: February 18, 2016**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-14124 |
| | ) | |
| JENNIFER L. DOCHERTY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

## MEMORANDUM OF OPINION[1]

This case is currently before the Court on the debtor's request for damages stemming from the repossession of the debtor's vehicle by National Auto Group, Inc. d/b/a JD Byrider and Motor Car Credit, Inc. d/b/a CNAC [the creditors] one day after the debtor filed for Chapter 7 relief. The debtor alleges that the creditors willfully violated the automatic stay by failing to return the vehicle until 17 days after the initial repossession, during which time it was necessary for the debtor to acquire a replacement vehicle for transportation. For the reasons that follow, the

---

[1] This opinion is not intended for official publication.

Court awards damages in favor of the debtor and against National Auto Group and Motor Car Credit in the amount of $1,074.25, pursuant to 11 U.S.C. § 362(k) and awards attorney's fees to the debtor's attorney in the amount of $500.00.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including credibility of the witnesses. "In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses, exhibits admitted into evidence, and any stipulations. Unless otherwise indicated, the following facts were established at trial by a preponderance of the evidence.

2

On July 10, 2014, the debtor and National Auto Group, Inc. entered into a retail installment contract and security agreement for the purchase of a used 2011 Kia Sorento [hereinafter, the Sorento] with monthly payments of $444.65. By the terms of the agreement, the contract and security agreement were assigned to Motor Car Credit Co., Inc. d/b/a/ CNAC (hereinafter Motor Car Credit). In July of 2015, the debtor fell behind on her monthly payments to Motor Car Credit; her payment due July 15, 2015, had not been paid. On the days leading up to the debtor's bankruptcy filing (specifically, July 16-20, 2015), the finance manager for Motor Car Credit, Ciara Biggs, called the debtor twice a day regarding her late payment with no response from the debtor.

The debtor filed her Chapter 7 voluntary petition on July 21, 2015, at 11:07 A.M., E.S.T. At the time of filing, the debtor was still driving the Sorento. The vehicle was listed on Schedule B, Item 25. On the Individual Debtor's Statement of Intention, the debtor indicated that the vehicle was still in her possession and it would be surrendered. On the same day that the debtor filed her voluntary petition, Biggs asked Chris McPhie, the president and CEO of Motor Car Credit and National Auto Group, to contact the debtor regarding her late July payment. This commenced a series of text messages between McPhie and the debtor approximately an hour and a half after the debtor's bankruptcy filing

3

(Debtor's Exhibit 2). At 12:46 P.M. on July 21, 2015, McPhie texted the debtor, "Hey Jenn, Ciara says you're not communicating with her??" In response, the debtor said, "She can contact my attorney: Joe Romano 216-621-7777." The debtor did not mention her bankruptcy case to Biggs or McPhie on July 21, 2015. Shortly after trading messages with the debtor on July 21, 2015, McPhie performed a PACER search using the debtor's name and a description of "ALL COURT TYPES PARTY SEARCH." McPhie testified that the search did not reveal any bankruptcy filing by the debtor, even though the PACER search was conducted at 11:59 A.M. Central Time, or 12:59 P.M. Eastern Time, approximately two hours *after* the debtor filed for bankruptcy. At some time on July 21, 2015, Biggs gave the order for the debtor's vehicle to be repossessed.

On the day after her bankruptcy filing, July 22, 2015, the debtor drove her vehicle to the Cleveland Clinic, where she is employed. The vehicle was repossessed around 9 A.M. while the debtor was at work. The debtor noticed that the vehicle was missing around 9:30 A.M., and shortly thereafter she contacted her attorney. At 9:57 A.M., she texted McPhie, "Please have my car returned to where they took - it my attorney has been advised." In response, McPhie texted, "It has been repoed due to past due." The debtor replied, "I filed bankruptcy and its against the law to take it - Chris I plan to surrender it but by law I have 30 days!"

4

McPhie replied, "We have no notice of you filing bankruptcy, I'm sorry I ever went out of my way to help you. It's been a horrible experience. Never thought you would do this to someone who was there for you when you needed it." McPhie did not perform another PACER search or take any other steps to verify whether the debtor had filed for bankruptcy. McPhie further advised the debtor to contact the finance department to arrange an appointment to pick up her personal belongings retrieved from the vehicle. The debtor scheduled an appointment with Biggs for July 25, 2015, to pick up her personal belongings.

On the evening of July 22, 2015, the debtor had a friend drive her home from work. The debtor had to take the next day, July 23, 2015, off from work because she had no available transportation. On July 24, 2015, the debtor used her mother's car to get to work. The debtor missed her July 25, 2015, appointment with Biggs due to lack of transportation. The debtor testified that she had an appointment with a medical professional due to stress caused by the repossession.

On July 25, 2015, the Court mailed out notice of the 341 meeting of creditors in the debtor's bankruptcy case (Docket No. 6). A copy of the notice was mailed to Motor Car Credit at 1190 Main Street, Cuyahoga Falls, OH 44221. On the Court's certificate of notice, the address for Motor Car Credit was marked with a '#,' meaning that the USPS National Change of Address system identified the

address as requiring an update. While the notice was still deliverable, Motor Car Credit was advised to update its address with the Court immediately.

On July 27, 2015, the debtor drove to Medina to pick up her personal belongings from Motor Car Credit. While there, she did not ask to see the vehicle, nor did she inquire about her license plates. She turned the car keys over to Biggs. There is conflicting testimony as to what vehicle the debtor drove to retrieve her personal belongings. The debtor testified that she drove her mother's car, a white Chevrolet Equinox, to Motor Car Credit on July 27, 2015, but both Biggs and Farin Eales, an auto detailer for National Auto Group, testified that the debtor drove a white Kia 4-door SUV with temporary tags.

Sometime in the week following the repossession of the Sorento, the debtor visited the Kia dealership in Bedford, Ohio, and leased a 2015 Kia Sportage [hereinafter, the Sportage] with an initial payment of $1,500 (Debtor's Exhibit 8). The debtor testified that she used one of her paychecks for the initial payment. The debtor could not specify the exact date on which she started driving the Sportage. The vehicle lease agreement for the Sportage is dated August 28, 2015, and provides for a monthly payment of $398.00 (Debtor's Exhibit 4). The debtor purchased an insurance policy covering the new vehicle for $870.92 ($145.15/month), which became effective on August 3, 2015 (Debtor's

6

Exhibit 10). The debtor testified that she obtained the Sportage because she did not think that Motor Car Credit would return the Sorento to her. When questioned whether the new vehicle lease contained a conditional delivery certificate, the debtor stated she was not aware of such certificate.

The debtor filed the first Motion for Sanctions on July 29, 2015. This motion was apparently the first contact that the debtor's attorney made with the creditors after filing the debtor's bankruptcy case on July 21, 2015. McPhie received the motion in the mail on August 4, 2015, and immediately called the creditors' attorney. Shortly thereafter, Biggs gave the order to Robert Feteke, who works for R&R Recovery, a repossession company, to return the Sorento to the debtor. Feteke returned the vehicle to the debtor's mother's house on August 7, 2015. Feteke parked the Sorento in the driveway with the keys in the ignition. The debtor was present during the return of the Sorento. Feteke testified that the debtor was loading items into a white vehicle and that she told him, "I don't need it [the Sorento], take it back." When told that she needed to sign a receipt in order for Feteke to take the Sorento back, the debtor called her attorney for advice. Ultimately, the debtor decided not to sign the receipt, and the vehicle was left in the debtor's mother's driveway without license plates. The debtor did not point out the lack of license plates to Feteke or inquire about their

7

whereabouts.

Farin Eales, an auto detailer for National Auto Group, was responsible for cleaning out the debtor's repossessed Sorento. She testified that, at the time of the repossession, she believed the company policy was to throw away the license plates from repossessed vehicles. Therefore, she discarded the debtor's license plates when cleaning out the vehicle. Eales testified that she was never specifically instructed to dispose of the debtor's license plates by McPhie or Biggs, and that she did not think she was doing something wrong by throwing the plates away. Since July of 2015, the creditors have clarified this policy. License plates are held for 45 days to let the owner retrieve them. If not retrieved, the plates are discarded. The debtor did not attempt to obtain temporary tags in order to drive the Sorento, and the vehicle sat unused in her mother's driveway from August 7, 2015, until sometime after the Court granted the creditors' amended motion for relief from stay on October 7, 2015.

As noted earlier, there was conflicting evidence regarding when the debtor began driving the new Sportage. Two employees of the creditors, Biggs and Eales testified that the debtor was driving a new SUV with temporary tags when she came to pick up her personal belongings on July 27. The new insurance policy identifying the Sportage has an application date and effective date of August 3.

8

And the vehicle lease for the Sportage is dated August 28. The Court found the debtor's testimony on this issue to be evasive, forgetful, or otherwise lacking credibility. Accordingly, the Court finds by a preponderance of the evidence that the debtor began driving the new Sportage on July 27, five days after her Sorento was repossessed.

During the hearing, debtor's attorney failed to establish by a preponderance of the evidence that the actions of the creditors, in failing to return the vehicle to the debtor and discarding her license plates, were motivated by any particular animus or feelings of ill-will towards the debtor.

## PROCEDURAL HISTORY

On July 29, 2015, the debtor filed a Motion for Sanctions for Violation of the Automatic Stay (Docket No. 8). The creditors filed a Memorandum in Opposition on August 13, 2015 (Docket No. 13). The creditors moved for relief from stay on August 21, 2015 (Docket No. 19). On August 26, 2015, the debtor filed an Objection to the creditors' motion for relief from stay (Docket No. 21). On September 11, 2015, Motor Car Credit filed a proof of claim (Claim No. 4-2), showing a secured claim of $15,472.59 and an unsecured claim of $608.94. On September 11, 2015, the debtor filed a Second Motion for Sanctions for Two Additional Violations of the Automatic Stay (Docket No. 40). The creditors filed

9

a Memorandum in Opposition on September 29, 2015 (Docket No. 46). The Court

granted the creditors relief from stay on October 7, 2015.

On December 10, 2015, the Court held an evidentiary hearing on the

debtor's request for sanctions. The Court admitted without objection debtor's

Exhibits 1, 2, 4, 5, 6, 7, 8, 9, 10, 14, and 15, and creditors' Exhibits A, B, and C

(as redacted). The Court admitted Exhibit 13 (Attorney Fee Invoice) over the

creditors' objection, but granted the creditors leave to file a brief opposing the

attorney's fees and costs contained in Exhibit 13 by January 7, 2016. The Court

also permitted the debtor to file an optional reply in support of Exhibit 13 by

January 21, 2016. The debtor filed a supplement to Exhibit 13 on

December 15, 2015 (Docket No. 75), and the creditors filed an Objection to

Exhibit 13 on January 7, 2016 (Docket No. 77). The debtor filed a reply to the

creditors' objection on January 21, 2016 (Docket No. 78).

## DISCUSSION

The Court may impose damages for violation of the automatic stay under

11 U.S.C. § 362. The filing of a bankruptcy petition gives rise to the automatic

stay of "any act to obtain possession of property of the estate or of property from

the estate or to exercise control over property of the estate" 11 U.S.C. § 362(a)(3).

Subsection 362(k)(1) (formerly subsection 362(h) prior to the 2005 bankruptcy

10

amendments) provides:

> . . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

A creditor willfully violates the stay if the creditor knows of the stay and violates the stay with an intentional act. *See In re Sharon,* 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999) (upholding a bankruptcy court's imposition of damages against a creditor that refused to return a repossessed car postpetition); *see also In re Grine*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010). "A 'willful violation' does not require proof of a specific intent to violate the stay, but rather 'an intentional violation by a party aware of the bankruptcy filing.' " *In re Baer*, 2011 WL 3667511, *4 (Bankr. E.D. Ky. 2011) (quoting *In re Sharon*, 234 B.R. at 687).

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *See In re Collett*, 2014 WL 2111309, *4 (B.A.P. 6th Cir. 2014) (slip copy) (citations omitted); *see also In re Swartzentruber*, 2014 WL 2930450, *1 (Bankr. N.D. Ohio 2014); *In re Pawlowicz,* 337 B.R. 640 (Bankr. N.D. Ohio 2005). Under § 362(k), damages

11

must be proven with reasonable certainty and cannot be based on conjecture or speculation. *See In re Archer*, 853 F.2d 497, 499-500 (6th Cir. 1988). As the party seeking damages, the debtor has the burden of proving entitlement to damages. *In re Sharon*, 234 B.R. at 687.

The Court must decide: (1) whether the creditors' actions constitute a violation of section 362; (2) if the creditors have violated section 362, whether such violation was "willful"; and (3) whether the debtor is entitled to damages, including attorney's fees.

## *THE CREDITORS' ACTIONS CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362*

The Court's first inquiry is whether the creditors' actions violated the automatic stay. The filing of the debtor's voluntary petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The debtor asserts that the creditors violated the automatic stay by obtaining possession and control over property of the estate, namely: (1) repossessing and retaining the Sorento after receiving notice of the debtor's bankruptcy and (2) disposing of the debtor's license plates and returning the vehicle to the debtor without license plates. *See* Docket Nos. 8 and 40.

12

*Repossessing and Retaining the Debtor's Vehicle*

The Court concludes that the debtor has shown by a preponderance of the evidence that the creditors violated the automatic stay by repossessing the debtor's vehicle and not returning it to her for 17 days. The debtor filed her voluntary petition on July 21, 2015, at 11:07 A.M. E.S.T., listing the vehicle on Schedule B. At that time, the vehicle became property of the bankruptcy estate, and the automatic stay went into effect. §§ 541(a)(1), 362(a). The creditors repossessed the vehicle on July 22, 2015, the day after the debtor filed for bankruptcy and the automatic stay went into effect. Furthermore, the creditors held on to the vehicle until August 7, 2015, for a period of 17 days. These actions violate the automatic stay. *See In re Murphy*, No. 13-31348, 2014 WL 1089854, at *2 (Bankr. N.D. Ohio Mar. 19, 2014) ("[T]here is no dispute that repossession of Plaintiff's Hummer and the subsequent failure to return it to her for nine days violated the automatic stay."). The debtor has shown by a preponderance of the evidence that the creditors acted to obtain and continue their possession of property of the estate (the Sorento) in violation of the automatic stay.

*Disposal of the Debtor's License Plates*

Although there is scant case law on the subject, several courts have held that

13

a creditor violates § 362(a)(3) in disposing of or destroying personal property of the estate. *See In re Campbell*, 398 B.R. 799, 810 (Bankr. D. Vt. 2008) (creditor violated the automatic stay by destroying debtor's furniture and taking personal property to the dumpster where it could not be recovered). A creditor has a duty "to surrender and turn over the personal property it caused to be removed" from the premises. *See Kaiser v. Leader Federal Bank for Savings*, 158 B.R. 808, 812 (Bankr. D. Neb. 1993). Even when the creditor has obtained relief from stay for regaining possession of collateral, the creditor violates the stay when it destroys or disposes of other personal property of the debtor. *See In re B. Cohen & Sons Caterers, Inc.*, 97 B.R. 808 (Bankr. E.D. Pa. 1989), *aff'd in relevant part*, 108 B.R. 482 (E.D. Pa. 1989).

In the present case, the debtor asserts that the creditors violated the automatic stay by removing her license plates from the vehicle and throwing them away. Because the license plates belonged to the debtor at the time the petition was filed, they became property of the estate under § 541(a)(1). It is undisputed that the creditors' employee removed the license plates from the vehicle and discarded them. Moreover, creditors' attorney has conceded responsibility for the cost of replacing the debtor's license plates. Therefore, the Court need not decide whether the disposal of the license plates constitutes a separate violation of the

14

automatic stay or is simply part of the damages stemming from the postpetition
repossession and failure to return the debtor's vehicle.

### THE CREDITORS' VIOLATION OF THE STAY WAS "WILLFUL"

"A violation of the automatic stay can be willful when the creditor knew of
the stay and violated the stay by an intentional act." *In re Sharon,* 234 B.R. at
688.  "As used in [current subsection 362(k)], 'willful,' unlike many other
contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42
(Bankr. N.D. Ohio 2004).  *See In re Sharon*, 234 B.R. at 687-88 (creditor's belief
that its action would not violate stay does not preclude a finding that creditor's
action was "willful" within meaning of section 362(k)).  *See also Johnston Envtl.
Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale
Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.),*
977 F.2d 826, 829 (3d Cir. 1992).  The debtor bears the burden of establishing by
a preponderance of the evidence that the violation of the automatic stay was
willful.  *See In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007).

In this case, the creditors received notice of the bankruptcy filing at
approximately 10:00 A.M. on July 22, 2015, when the debtor texted the creditors'
CEO and President: "I filed bankruptcy and its against the law to take it [the
Sorento]."  The creditors argue that the official notice of the debtor's bankruptcy

15

filing was sent to an incorrect address in Cuyahoga Falls and that the debtor's text to McPhie does not constitute notice of her bankruptcy. "[T]he notice of the debtor's bankruptcy 'does not need to be formal, so long as the facts would cause a reasonably prudent person to make additional inquiry.' " *In re Swartzentruber,* No. 13-61147, 2014 WL 2930450 at *2 (Bankr. N.D. Ohio June 27, 2014) (quoting *In re Stewart*, 499 B.R. 557, 571 (Bankr. E.D. Mich. 2013)). Courts have found that an oral notification of a bankruptcy filing to be sufficient. *In re Murphy*, No. 13-31348, 2014 WL 1089854, at *2 (Bankr. N.D. Ohio Mar. 19, 2014) (slip opinion). Although McPhie conducted a PACER search on July 21, 2015, once the debtor informed him of her bankruptcy case a day *after* that PACER search, the creditors would, at a minimum, be obligated to make further inquiry before rejecting the debtor's statement that she had filed for bankruptcy. In this case, there is nothing to indicate that the creditors took any steps to confirm or deny the debtor's text on July 22, 2015, that she had filed for bankruptcy. Therefore, this Court concludes that around 10:00 A.M. on July 22, 2015, the creditors received notice of the debtor's bankruptcy.

The creditors repossessed the car before 10:00 A.M. on July 22, 2015, at which time they had not yet received notice of the debtor's bankruptcy. Because a willful violation of the stay requires that the creditors have knowledge of the stay

16

at the time they acted, the Court concludes that the creditors' initial repossession of the vehicle was not a willful violation of the stay.

However, the Court concludes that the creditors' continued possession of the vehicle for 17 days after July 22, 2015, was a willful violation of the automatic stay. "To avoid violating § 362(a), a creditor is not only required to refrain from certain activity, but may be required to take affirmative action." *In re Horace*, 2015 WL 5145576 at *4 (Bankr. N.D. Ohio Aug. 28, 2015). *See also Sharon,* 234 B.R. at 688 (creditor willfully violated the automatic stay by failing to return the debtor's car that it had repossessed prepetition). Once the creditor learns that a bankruptcy petition has been filed, the creditor has an affirmative duty to return the property to the debtor and to restore the status quo. *See In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989) (creditor had not known of debtor's filing at the time of repossession but was, nonetheless, required to return vehicle); *Dawson v. J & B Detail, LLC* (*In re Dawson*), Adv. No. 05-1463, 2006 WL 2372821 at *8 (Bankr. N.D. Ohio July 28, 2006) ("While the Court does not expect instantaneous compliance with section 362 upon receipt of notice [of the bankruptcy], the Court does expect those acts which violate the automatic stay to be stopped and/or corrected within a reasonable time"). Accordingly, having been notified of the debtor's bankruptcy around 10:00 A.M. on July 22, 2015, it was incumbent upon

17

the creditors to return the vehicle within a short period of time. Yet they retained the vehicle for 17 days after receiving notice of the bankruptcy and the debtor's request to have the vehicle returned. There is no dispute that the creditors could have taken affirmative steps to return the debtor's vehicle promptly. Accordingly, the Court concludes that the creditors' failure to return the vehicle to the debtor shortly after receiving notice of the bankruptcy and the debtor's request to have the vehicle returned was a willful violation of the automatic stay.

*THE DEBTOR IS ENTITLED TO ACTUAL DAMAGES FOR THE CREDITORS' WILLFUL VIOLATION OF THE AUTOMATIC STAY*

An award of actual damages is mandatory if the stay violation is willful. *In re Bivens*, 324 B.R. at 42; *In re Johnson,* 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000). *See United States v. Harchar*, 331 B.R. 720 (N.D. Ohio 2005) (costs and attorney's fees are regularly awarded as actual damages for violation of the stay); *In re Sharon*, 234 B.R. at 687-88 (upholding a bankruptcy court's imposition of damages against a creditor for violation of the automatic stay). However, an award must be reasonable and supported by the evidence. *Archer*, 853 F.2d at 499. Moreover, the debtor carries the burden of "requesting damages in a certain amount and of supporting that claim with evidence" when seeking damages under § 362(k). *Baer*, 2011 WL 3667511 at *10.

18

In the present case, the creditors willfully violated the automatic stay when they failed to return the debtor's vehicle to her promptly after receiving notice that the debtor had filed a Chapter 7 bankruptcy petition and had requested to have the vehicle returned. Thus, the debtor is entitled to actual damages, including costs and attorney's fees, resulting from the creditors' willful violation of the automatic stay.

During the evidentiary hearing, the debtor set forth a number of specific amounts she is seeking for damages resulting from the creditors' willful violation of the automatic stay:

(1) The $1,500 initial payment to lease the Sportage;

(2) Two months of payments on the Sportage ($398 x 2 = $796);

(3) Two months' worth of the difference between the monthly insurance payments on the Sportage and the debtor's previous monthly insurance payments on the Sorento (($145.15 - $84.96) x 2 = $120.38);

(4) Two days of missed work ($216 x 2);

(5) $7,413.92 in attorney's fees (Docket No. 75); and

(6) Punitive damages in the amount of $10,000.

The Court will address the damages in three sections: actual damages (Numbers 1, 2, 3, and 4 above); attorney's fees (Number 5 above); and punitive damages

19

(Number 6 above).

*Actual Damages: Initial Payment, Monthly Car Payments, Insurance Premiums,*
*Two Days of Missed Work, and Replacement License Plates*

The debtor seeks damages in the amount of $1,500.00 for the initial payment to lease the Sportage, the replacement vehicle for the Sorento. The debtor testified that she needed to purchase or lease another vehicle due to the creditors' repossession of the Sorento. However, even before the creditors repossessed the Sorento, the debtor planned to surrender it, as noted in her Statement of Intention, and purchase or lease another vehicle within 30 to 60 days after filing for bankruptcy. Therefore, the Court declines to award the debtor $1,500.00 because the debtor would have incurred the cost of replacing her vehicle in any event. The cost of permanently replacing the vehicle, which the Court rejects, is distinct from the cost of having to obtain a replacement vehicle 30 to 60 days earlier than anticipated, which the Court discusses below.

Next, the debtor seeks two months worth of payments on the Sportage, which she was forced to lease due to the creditors' failure to promptly return the Sorento.

The Court believes that the debtor is entitled to damages for the cost of having to obtain a replacement vehicle 30 to 60 days earlier than anticipated.

20

When the creditors failed to timely return the vehicle in response to the debtor's text message to McPhie on July 22, it was reasonable for the debtor, as a non-lawyer, to assume that she would not get her car back and that it was necessary to obtain a replacement vehicle. In the present case, however, it is difficult for the Court to put a precise figure on the cost of having to obtain a replacement vehicle earlier than anticipated.

The evidence indicates that the debtor obtained use of the new Sportage beginning on or about July 27, although the delivery receipt is dated August 28. The 60 month lease runs from the delivery date through August 28, 2020, with monthly payments of $398. The debtor made an initial payment of $1,500 on or about September 4, and the first monthly payment of $398 was apparently due on September 1, 2015. *See* Debtor's Exhibit 8 (although the Court notes that portions of the invoice, including the amounts for "CURRENT," "NEW BALANCE," and certain other entries seem to be redacted without explanation and do not appear to involve personal identifiers such as social security numbers or birth dates that must be redacted under Bankruptcy Rule 9037). From the evidence, it appears that the cost of using the new Sportage from July 27 to August 28 was absorbed in the cost of the lease.

It is also unclear exactly when the debtor would have obtained a

21

replacement vehicle had the creditors promptly returned her Sorento after it was repossessed on July 22. The debtor might have waited until shortly before relief from stay was eventually granted on October 7. On the other hand, the debtor's text message on July 22 indicates that she understood she had 30 days from her bankruptcy filing to surrender it. *See* 11 U.S.C. §§ 362(h)(1)(B) and 521(a)(2)(B) (stay terminates with respect to such property if debtor fails to perform intention within 30 days after first date set for meeting of creditors); *In re Johnson*, 253 B.R. 857, 860-61 (Bankr. S.D. Ohio 2000) (automatic stay protects debtor by allowing debtor breathing space and protects creditors from the possibility that one creditor will obtain payment on its claims to the detriment of all others). The Court concludes that, as a result of the creditors' failure to promptly return the Sorento, the debtor had to obtain a replacement vehicle about one and a half months earlier than anticipated. Using the monthly lease payment of $398 for the Sportage and adding 1/60 of the $1,500 initial payment, the Court calculates a monthly replacement cost of $423. This equates to damages over a month and a half of about $635.

While the Court is troubled by the unexplained redactions in Exhibit 8, even if O'Brien Leasing had waived the first month's payment due on the new Sportage, the debtor would still have incurred damages in leasing a car one and a

22

half months earlier than anticipated. This is because the debtor presumably could have obtained a comparable lease agreement waiving the first month's payment a month and a half later, had the creditors promptly returned the Sorento.

Next, the debtor seeks damages for two months' worth of increased car insurance premiums – a net increase of about $60 per month. Had the debtor been able to continue driving her Sorento until the creditors obtained relief from stay, the debtor presumably would have avoided any increase in insurance premiums for about two months. And if, as a result of the failure to timely return the Sorento, the debtor had to pay more to buy comparable insurance coverage for a comparably-priced car, the net increase might well be an appropriate damage. However, the debtor has failed to establish by a preponderance of the evidence that the new policy provided comparable insurance coverage for a comparably-priced car. Rather, the record indicates that the debtor purchased an insurance policy with higher limits for bodily injury and uninsured vehicle coverage – $100,000 for the Sportage versus $25,000 per person / $50,000 per accident for the Sorento. *See* Debtor's Exhibits 9 and 10. In addition, the Sportage is worth almost $10,000 more than the Sorento – $23,925 versus $14,050. *See* Debtor's Exhibit 5; Schedule B. In other words, the higher insurance premiums presumably stem from the debtor's decisions to opt for higher

23

coverage limits and to lease a more expensive car. Therefore, the debtor has not established that the creditors' failure to timely return her Sorento caused the net increase in the her car insurance premiums.

The debtor also seeks damages for missing two days of work at the Cleveland Clinic. She missed work on July 23, 2015, due to lack of transportation after the Sorento was repossessed. She missed another day of work on December 10, 2015, to attend the evidentiary hearing. The debtor seeks $216.00 per day for a total of $432.00. The Court awards the debtor $432.00 for two days of missed work.

The debtor does not specifically itemize a request for damages for the disposal of her license plates. However, the creditors' attorney conceded liability for the plates. In Ohio, a driver may transfer his or her existing license plates to another motor vehicle upon payment of a fee and registration of the new vehicle. *See* Ohio Rev. Code Section 4503.12. According to the Ohio Bureau of Motor Vehicles website, the fee for transferring license plates is $4.50. The fee for replacing two license plates is $11.75. http://www.bmv.ohio.gov/vr-firstissuance.aspx. If the creditors had not disposed of the debtor's license plates, the debtor could have transferred them to the Sportage for $4.50, saving $7.25 over the cost of purchasing new license plates. Therefore, the Court awards the

24

debtor $7.25 for the loss of her license plates.

Although the debtor did not itemize a request for emotional damages, the Court would decline to award emotional damages in this instance. While the Court realizes that the debtor was under a lot of stress due to the bankruptcy, the repossession, the move to a new apartment, and her mother's health, the debtor did not provide sufficient testimony warranting an award of emotional damages stemming solely from the creditors' delay in returning the repossessed vehicle. In addition, it is unclear whether emotional damages are even recoverable under § 362(k). *Compare Harchar*, 331 B.R. at 723 (noting circuit split but holding that emotional damages are not compensable for violations of the automatic stay), *with Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 302-03 (Bankr. N.D. Ohio 2013) (noting circuit split but opining in dicta that "emotional distress damages are actual damages that can be recovered for a stay violation"). *See also Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1269-71 (11th Cir. 2014) (discussing split among circuit courts and concluding that emotional distress damages are compensable under § 362(k)).

To summarize thus far, the Court awards the debtor $635.00 for the cost of having to obtain an replacement vehicle about 45 days earlier than anticipated, $432.00 for two days of missed work, and $7.25 for new license plates, for a total

25

of $1,074.25.

*Attorney's Fees*

Section 362(k) authorizes an award of attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action that § 362(k) authorizes. *In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (en banc); *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008); *In re Duby*, 451 B.R. 664, 674-77 (B.A.P. 1st Cir. 2011). The debtor seeks attorney's fees in the amount of $7,413.92 (45.30 hours at an hourly rate of $250.00) stemming from the evidentiary hearing and the two motions for orders to show cause upon the creditors (Debtor's Supplement to Exhibit 13, Docket No. 75). In response, the creditors assert that the amount of the fees is unreasonable, that the debtor did not provide sufficient testimony regarding the invoice at the hearing, and that the debtor failed to mitigate her damages, resulting in needless legal fees. The Court declines to consider the Affidavit of Harold A. Corzin, which was attached to the creditors' response to Exhibit 13, for the same reasons that the Court declined to hear his testimony at the evidentiary hearing on December 10, 2015. The Court has reviewed the debtor's testimony as well as the invoice submitted by the debtor in support of her claim for attorney's fees.

Even if the debtor suffers actual damages in the form of attorney's fees, they

26

may not be recoverable if the attorney did not take steps to mitigate damages.
Debtors and their attorneys are under an obligation "to attempt to mitigate
damages *prior to seeking court intervention*." *In re Schang*, No. 14-51178,
2015 WL 3441178 at *3 (E.D. Mich. May 28, 2015) (slip opinion) (emphasis in
original) (citing *In re Oksentowicz*, 324 B.R. 628, 630 (Bankr. E.D. Mich. 2005)).
*See also In re Jean–Francois*, 516 B.R. 699 (E.D.N.Y. 2014) (a debtor must
exercise due diligence in mitigating damages for a creditor's violation of the
automatic stay). During the evidentiary hearing held in *Schang*, the bankruptcy
court asked debtor's attorney what attempts he had made to contact the creditor
when he first learned that the creditor may have been violating the automatic stay.
Specifically, the court inquired whether debtor's attorney made a simple phone
call, sent an email, or mailed a letter to the creditor. Because the debtor did not
take any of these steps and instead "just jumped into [filing the] motion [for
sanctions]," the court found that the debtor failed to mitigate damages. *Schang*,
2015 WL 3441178 at *3. The duty to mitigate reflects the sound judicial policy
that profit-making from violations of the automatic stay is "inherently improper."
*In re Duling*, 360 B.R. 643, 645-47 (Bankr. N.D. Ohio 2006). *See also* Fed. R.
Bankr. Proc. 9011 (prohibiting any action brought for "any improper purpose,
such as . . . needless increase in the cost of litigation").

27

This policy is analogous to the doctrine of avoidable consequences which provides that "the person who stubbornly refuses to protect his own interests is given no legal redress." Restatement (Second) of Torts § 918 cmt. a (1979). *See also* Restatement (Second) of Contracts § 350 (1981). For example, the victim of an intentional tort is "entitled to damages only for the pain, loss of earnings and other elements of damages that [he] would have suffered if he had used reasonable care." Restatement (Second) of Torts § 918 cmt. a, illus. 1 (1979).

In the present case, the creditors failed to timely return the debtor's vehicle after she had asked them to return it, despite being informed of her pending bankruptcy case. The creditors therefore continued to retain the vehicle at their peril. Nevertheless, the evidence indicates that the creditors did not expressly refuse to return the vehicle. Rather, they simply failed to act on the debtor's text message asking for her car to be returned. Had the creditors made it clear that nothing short of a court order would cause them to return the debtor's Sorento, then it might have been reasonable for the debtor's attorney to forgo a telephone call or other contact and just file a motion seeking damages. But that was not the situation here. When the debtor's car was repossessed on July 22, the debtor notified her attorney immediately. But her attorney made no attempt to contact the creditors himself and demand that the creditors return the car promptly or face a

28

motion for significant damages for violation of the automatic stay. Instead, debtor's attorney filed other documents in the debtor's bankruptcy case on July 27, and filed a motion for sanctions on July 29, a week after the car was repossessed. And while the motion for sanctions represented that the debtor had informed the creditors on July 21 of the filing of the bankruptcy and had provided the case number *before* the vehicle was repossessed, those representations in the motion are not supported by the evidentiary record. Rather, the debtor never mentioned her bankruptcy filing to the creditors until *after* her car was repossessed. Nor is there any evidence that the debtor provided a bankruptcy case number when she texted McPhie on July 22 just after her car was repossessed.

Similar to the *Schang* case, this Court finds that the debtor's attorney failed to mitigate damages before seeking court intervention. Once the debtor asked for her car to be returned and the creditors failed to comply, even with knowledge of the bankruptcy filing, the creditors willfully violated the automatic stay at their own peril. That being said, if a stern phone call from the debtor's attorney would be enough to get the vehicle returned, it is hard to say that more than 40 hours of attorney's fees are reasonable. The Court cannot say with absolute certainty that, had debtor's attorney made such a call, the vehicle would have been returned in a day or so and the creditor would have agreed to pay the relatively small amount of

29

damages, including attorney's fees, that accrued. Nevertheless, what is certain, is that the failure of debtor's attorney to make such a call eliminated the possibility of a prompt and inexpensive resolution of the stay violation. *See Duling*, 360 B.R. at 645-47 (profit-making from violations of either the automatic stay or discharge injunction is "inherently improper"). *See also* Fed. R. Bankr. Proc. 9011 (prohibiting any action brought for "any improper purpose, such as . . . needless increase in the cost of litigation").

The Court declines to award $7,413.92 in attorney's fees and instead awards $500.00, representing two hours of legal work at a rate of $250.00/hour. The Court believes that this amount of time would have been sufficient for debtor's attorney to contact the creditors and have the vehicle returned to the debtor promptly. Additionally, the Court notes that debtor's attorney is not entitled to seek from the debtor any of the fees disallowed by the Court. *See* Docket No. 1 at page 40 of 51 (fee disclosure statement filed pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b)).

*Punitive Damages*

The debtor seeks punitive damages in the amount of $10,000 for the creditors' willful violation of the automatic stay. A party injured by a willful violation of the stay may recover punitive damages in appropriate circumstances;

30

the debtor must show that the "creditor's conduct was 'egregious, vindictive, or intentionally malicious.' " *In re Bilfield*, 494 B.R. 292, 304 (Bankr. N.D. Ohio 2013), quoting *In re Bivens,* 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004). *See also Weary v. Poteat*, No. 15-5159, 2015 WL 5712191, at *2 (6th Cir. Sept. 30, 2015) ("[t]his, frankly, is the most egregious automatic stay case that I've heard since I've been on the bench and I've been on the bench a long time") (quoting the bankruptcy court transcript at page 16). "While proof of an overt wrongful intent is not required, it must be shown that the creditor acted in bad faith or otherwise undertook its actions in reckless disregard of the law." *Bivens*, 324 B.R. at 42. An award of punitive damages is within the bankruptcy court's discretion where actual damages are an insufficient deterrent to further violations. *See Archer*, 853 F.2d at 500.

The Court declines to award punitive damages in this case. Imposing punitive damages on a creditor "is not an action to be taken lightly." *Bivens*, 324 B.R. at 42. The creditors conduct in this case, although willful, was not egregious, vindictive, or intentionally malicious. The Court does not find the creditors' actions to be "threatening and clearly coercive"; their employees' demeanor and tone were not "openly defiant of the automatic stay." Transcript of Memorandum Opinion at 15, *In re Poteat*, No. 13-31669 (Bankr. E.D. Tenn.

31

Dec. 10, 2013), *aff'd*, 2015 WL 5712191, (6th Cir. Sept. 30, 2015). Furthermore, the Court believes that the award of actual damages, coupled with the significant legal costs in opposing the debtor's request for sanctions, will be sufficient to deter future violations of the automatic stay. *See Archer*, 853 F.2d at 500. Thus, the Court denies the debtor's request for punitive damages.

For the reasons stated above, the Court awards the debtor damages in the amount of $1,574.25. This represents actual damages for the cost of having to obtain a replacement vehicle about 45 days earlier than anticipated ($635.00), two days of missed work ($432.00), new license plates ($7.25), and reasonable attorney's fees ($500.00).

*BEST PRACTICES*

Finally, the Court makes this addition observation, which might fall under the category of "best practices," should any debtor's attorney be faced with a similar situation in the future. In a situation like the present case, when a debtor is behind on her car payments, is receiving daily collection calls, and is facing imminent repossession of her vehicle, it is incumbent on the debtor's attorney to take the initiative in promptly notifying the affected creditor of the debtor's bankruptcy filing. Had the debtor's attorney promptly sent a fax, text message, or made a phone call to either Biggs or McPhie, and included the debtor's bankruptcy

32

case number and date of filing, the debtor's vehicle would likely never have been repossessed at all. A bankruptcy filing is a stressful and emotional event for an individual debtor. Part of why a debtor pays for a skilled bankruptcy professional is so that the attorney can handle the critical task of notifying creditors who are likely to take imminent action against the debtor or the debtor's property before receiving formal notice of the bankruptcy filing from the court. Indeed, in this case, the debtor's attorney made a special effort to notify immediately a different creditor that had an active garnishment against the debtor. *See* Exhibit 13, July 21, 2015 entry: "draft cover letter with notice of filing of BK to Avon Lake Muni in Best-Reward case." That garnishment apparently stemmed from the repossession and deficiency judgment involving another vehicle. *See* Docket No. 1 at p. 33 of 51 (Statement of Financial Affairs). As this case unfortunately demonstrates, a debtor may be too embarrassed or simply not sufficiently steeped in the legal formalities to tell the creditor on her own that a bankruptcy case has been filed. In making this observation, however, the Court hastens to say that this observation played no part in the Court's analysis of the debtor's claim for damages, including attorney's fees, under section 362(k).

33

CONCLUSION

For the foregoing reasons, creditors National Auto Group, Inc. d/b/a JD Byrider and Motor Car Credit, Inc. d/b/a CNAC willfully violated the stay by failing to promptly return the debtor's vehicle after it was repossessed.  The debtor, Jennifer Docherty, is awarded actual damages, including attorney's fees, in the amount of $1,574.25 pursuant to 11 U.S.C. § 362(k)(1).

IT IS SO ORDERED.